IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cr-30045-3 |
| | ) | |
| TERRI PINKERTON, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

**SUE E. MYERSCOUGH, U.S. District Judge:**

Before the Court is Defendant Terri Pinkerton's Motion for Compassionate Release (d/e 231) requesting a reduction in her term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). For the reasons set forth below, the motion is GRANTED.

## I. BACKGROUND

On September 9, 2016, Defendant pled guilty to conspiring to manufacture 50 grams or more of a substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Defendant's guilty plea was made pursuant to a plea agreement that the parties entered into pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure.

On January 9, 2017, the Court accepted the plea agreement and sentenced Defendant to 84 months' imprisonment and 8 years of supervised release. Defendant is currently serving her sentence at FMC Carswell and has a projected release date of January 30, 2023.

According to the Presentence Investigation Report (PSR) prepared for Defendant's sentencing, Defendant was diagnosed with diabetes when she was 24 years old and was prescribed medication, including insulin, to treat her diabetes. PSR (d/e 142), ¶ 65. The PSR also notes that Defendant was diagnosed with high blood pressure and neuropathy in 2014 and underwent a bone graft in September 2016 to address avascular necrosis. Id. ¶¶ 66, 68.

On April 21, 2020, Defendant filed a pro se motion for compassionate release (d/e 229) pursuant to 18 U.S.C. § 3582(c)(1)(A). On April 28, 2020, after the Federal Public Defender's Office was appointed to represent Defendant, an amended Motion for Compassionate Release was filed. Defendant requests compassionate release due to her health issues and the COVID-19 pandemic. Defendant also requests that the Court waive the exhaustion requirement found at 18 U.S.C. § 3582(c)(1)(A).

Defendant's amended motion notes that a 30-year-old woman housed at FMC Carswell died on April 28, 2020, after testing positive for COVID-19.

Defendant asserts that, for two years, the Bureau of Prisons (BOP) mismanaged her diabetes.  Specifically, Defendant alleges that the BOP refused to give her the insulin she had been taking before reporting to serve her sentence and that she did not respond well to the insulins used by the BOP.  Defendant claims that she has suffered some vision loss and must now use a wheelchair approximately 50% of the time due to Charcot foot, a condition that causes the weakening of bones in the foot or ankle and can eventually lead to foot deformation.

If released from custody, Defendant will reside with her daughter and son-in-law in a house that is being renovated to include a bedroom in the basement.  The United States Probation Office, in a Memorandum (d/e 232) addressing Defendant's request for compassionate release, concludes that Defendant's daughter's house could provide a suitable residence for Defendant.

On April 29, 2020, the Government filed a Response to Defendant's Motion for Compassionate Release (d/e 233).  The

Government does not oppose Defendant's compassionate release motion.

## II. ANALYSIS

Generally, the Court is statutorily prohibited from modifying a term of imprisonment once it has been imposed. See 18 U.S.C. § 3582(c). However, several statutory exceptions exist, one of which allows the Court to grant a defendant compassionate release if certain requirements are met. See 18 U.S.C. § 3582(c)(1)(A).

Section 603(b)(1) of the First Step Act amended the statutory language at 18 U.S.C. § 3582(c)(1)(A). See First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194. Prior to the First Step Act, the Court could grant a defendant compassionate release only if the Director of the BOP filed a motion seeking that relief. With the enactment of the First Step Act, 18 U.S.C. § 3582(c)(1)(A) now allows an inmate to file a motion for compassionate release, but only after exhausting administrative review of a BOP denial of the inmate's request for BOP to file a motion or waiting 30 days from when the inmate made his or her request to BOP, whichever is earlier. The statute now provides as follows:

> The court, upon motion of the Director of the Bureau of

> Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

Here, because Defendant has not made a request to BOP to file a compassionate release motion on her behalf, the exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A) has not been satisfied. Defendant argues that the Court has the authority to waive compliance with this statutory requirement.

Below, the Court addresses whether it has jurisdiction to consider Defendant's motion, whether the Court can waive the exhaustion requirement set forth in 18 U.S.C. § 3582(c)(1)(A), and whether Defendant is entitled to compassionate release.

A. **Jurisdiction**

Federal district courts are "courts of limited jurisdiction." Exxon Mobil Corp. v. Allapattah Servs. Inc., 545 U.S. 546, 552 (2005). Without jurisdiction, this Court cannot hear Defendant's request for compassionate release. See Henderson ex rel. Henderson v. Shinseki, 562 U.S. 428, 434 (2011).

An important distinction exists as to whether a procedural rule is a jurisdictional requirement or a claim-processing rule. See id. ("This question is not merely semantic but one of considerable practical importance for judges and litigants."); Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154, 160 (2010). Therefore, "a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity, that is, its subject-matter or personal jurisdiction." Henderson, 562 U.S. at 435. Claim-processing rules "seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." Id.

The U.S. Supreme Court adopted a "bright-line" test for deciding when to classify a procedural rule as jurisdictional. Arbaugh v. Y & H Corp., 546 U.S. 500, 515-16 (2006). The inquiry

is whether Congress has "'clearly state[d]'" that the rule is jurisdictional."  Sebelius v. Auburn Reg'l Med. Ctr., 568 U.S. 145, 153 (2013).  "Absent such a clear statement . . . courts should treat the restriction as nonjurisdictional in character."  Id.

In United States v. Taylor, the Seventh Circuit, overruling its own precedent, held that 18 U.S.C. § 3582(c)(2) sets forth a non-jurisdictional rule.  778 F.3d 667, 671-72 (7th Cir. 2015) ("A district court has subject-matter jurisdiction to consider a motion for relief under 18 U.S.C. § 3582(c)(2) regardless of whether the moving defendant is actually eligible for such discretionary relief.").  Section 3582(c)(2) allows the Court to reduce a term of imprisonment if the defendant was sentenced based on a sentencing range that was subsequently lowered by the United States Sentencing Commission.  18 U.S.C. § 3582(c)(2).

While Taylor did not address § 3582(c)(1)(A), Taylor's reasoning is equally applicable to that statutory subsection.  The Court finds that Congress did not "clearly state" in § 3582(c)(1)(A) that the exhaustion requirement is jurisdictional.  Therefore, the Court finds that the exhaustion requirement found in 18 U.S.C. § 3582(c)(1)(A) is a claim-processing rule, not a jurisdictional rule.  See Henderson,

562 U.S. at 435 (noting that claim-processing rules merely require "that the parties take certain procedural steps at certain specified times"); United States v. Haney, 2020 WL 1821988 at *2 ("The exhaustion requirement provides "who -- the BOP or defendant -- may move for compassionate release and when such a motion may be made.").

**B.    Waiver of the Exhaustion Requirement**

Although the Court has jurisdiction to hear Defendant's motion, Defendant has not met the exhaustion requirement set forth in § 3582(c)(1)(A).  The Court must determine whether it has the authority to waive the 30-day waiting period of the exhaustion requirement.

In the short time the COVID-19 pandemic has wreaked havoc on this country, many federal judges have considered this issue. Some judges have found that they have the discretion to waive the 30-day requirement in light of the serious risks associated with COVID-19.  See, e.g., United States v. Scparta, 2020 WL 1910481 (S.D.N.Y. April 19, 2020); United States v. Guzman Soto, 2020 WL 1905323 (D. Mass. Apr. 17, 2020)  United States v. Russo, 2020 WL 1862294 (S.D.N.Y. Apr. 14, 2020); United States v. Smith, 2020 WL

1849748 (S.D.N.Y. Apr. 13, 2020); United States v. Bin Wen, 2020 WL 1845104, at *4-7 (W.D.N.Y. Apr. 13, 2020); United States v. Haney, 2020 WL 1821988, at *1 (S.D.N.Y. Apr. 13, 2020); United States v. Sawicz, 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020); United States v. McCarthy, 2020 WL 1698732 (D. Conn. Apr. 8, 2020); United States v. Colvin, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020); United States v. Perez, 2020 WL 1546422 (S.D.N.Y. Apr. 1, 2020). Other judges have held that the 30-day requirement is mandatory, not subject to any exception. See, e.g., United States v. Cox, 2020 WL 1923220, at *1 (S.D. Ind. Apr. 21, 2020); United States v. Demaria, 2020 WL 1888910 (S.D.N.Y. Apr. 16, 2020); United States v. Rensing, 2020 WL 1847782, at *1 (S.D.N.Y. Apr. 13, 2020); United States v. Roberts, 2020 WL 1700032, at *2 (S.D.N.Y. Apr. 8, 2020); United States v. Woodson, 2020 WL 1673253, at *2 (S.D.N.Y. Apr. 6, 2020).

Equitable exceptions to statutory rules have been recognized in the past. See Holland v. Florida, 560 U.S. 631, 645-46 (2010) (noting that "a nonjurisdictional federal statute of limitations is normally subject to a rebuttable presumption in favor of equitable tolling"); Hamer v. Neighborhood Hous. Servs. of Chicago, 138 S. Ct.

13, 18 n.3 (2017) (reserving on the issue of "whether mandatory claim-processing rules may be subject to equitable exceptions" other than waiver and forfeiture). Other circuit courts have recognized equitable exceptions since the Supreme Court's decision in Ross v. Blake, 136 S. Ct. 1850 (2016). See Grewal v. Cuneo Gilbert & LaDuca LLP, 2020 WL 897410, at *1 (2d Cir. Feb. 25, 2020) ("We have held that Rule 4(a)'s 28-day deadline is not jurisdictional, but is a 'claim-processing rule' and, as such, its enforcement is subject to waiver, forfeiture, and other equitable exceptions."); Fed. Ins. Co. v. United States, 882 F.3d 348, 361 (2d Cir. 2018) ("Claim-processing rules, much like statutes of limitations, . . . may be subject to equitable tolling doctrines.").

In Ross, the Supreme Court considered the exhaustion requirements of the Prison Litigation Reform Act (PLRA), which stated that "no action shall be brought with respect to prison conditions . . . until such administrative remedies as are available are exhausted." 136 S. Ct. at 1856. The Supreme Court held that the exhaustion of administrative remedies was mandatory because the statutory language "suggest[ed] no limits on an inmate's obligation to exhaust." Id. As in Ross, the exhaustion requirement

at issue here is imposed by statute, not case law, so the Court has less authority to recognize exceptions. Id. at 1857 ("[J]udge-made exhaustion doctrines, even if flatly stated at first, remain amenable to judge-made exceptions. But a statutory exhaustion provision stands on a different footing. There, Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to.") (citation omitted).

The statutory text of § 3582(c)(1)(A) and the congressional intent for implementing amendments to that section substantially differ from the PLRA. With respect to the PLRA, Congress amended 42 U.S.C. § 1997e(a) to make "exhaustion provisions mandatory." Historical and Statutory Notes, 42 U.S.C.A. § 1997e (West Supp. 1997). Quite the opposite is true for § 3582(c)(1)(A), as the First Step Act extended to inmates the ability to file motions for compassionate release.

In addition, as recognized in Haney, § 3582(c)(1)(A) is not "an exhaustion requirement in the traditional sense." 2020 WL 1821988, at *3. Section 3582(c)(1)(A) does not require the inmate to fully exhaust BOP procedures before coming to court. The PLRA, on the other hand, does require complete exhaustion of available

administrative remedies.  See Guzman Soto, 2020 WL 1905323, at *5 ("This alternative to exhaustion suggests that Congress understood that some requests for relief may be too urgent to wait for the BOP's process."); Haney, 2020 WL 1821988, at *3 ("But the hybrid requirement in this statute – either exhaust or wait 30 days – substantially reduces the importance of the first purpose, as it allows a defendant to come to court before the agency has rendered a final decision.").  This Court agrees with the reasoning expressed in Guzman Soto:

> While a court may certainly decline to consider a motion where Defendant has not waited thirty days, nothing in the statutory scheme suggests that Congress intended to preclude the court from exercising judicial discretion and to take into account timeliness and exigent circumstances related to why the defendant seeks compassionate release.

Guzman Soto, 2020 WL 1905323, at *5.

Mandating the exhaustion requirement in this case and other cases around the country during the COVID-19 pandemic cannot be what Congress intended.  Based on the House Report for the First Step Act, the statute is designed to "enhance public safety" and "make . . . changes to Bureau of Prisons' policies and procedures to ensure prisoner and guard safety and security."  H.R.

Rep. 115-699 at 22; see also Scparta, 2020 WL 1910481, at *7. Denying Defendant's motion without reaching the merits, only to order Defendant to make a request to BOP and wait 30 days, would frustrate these purposes. In that time, Defendant is at a high risk of contracting a deadly illness based on the realities of BOP facilities, causing irreparable harm and rendering her request for compassionate release futile.

The Court concludes that § 3582(c)(1)(A) does not require the Court to wait to consider a compassionate release request if there is a credible claim of serious and imminent harm from this pandemic. That does not mean the Court will waive the 30-day period in all cases. The decision must be made on a case-by-case basis. In this case, the Court finds that the 30-day requirement should be waived. The Court excuses Defendant's failure to file a request with the BOP and wait 30 days thereafter to seek relief pursuant to 18 U.S.C. § 3582(c)(1)(A).

**C.     Eligibility for Compassionate Release**

As Defendant's motion is properly before the Court, the next issue is whether Defendant is eligible for compassionate release. For Defendant to be eligible for compassionate release, the Court,

after considering the factors set forth at 18 U.S.C. § 3553(a), must determine that "extraordinary and compelling reasons" warrant a reduction in Defendant's term of imprisonment and that the reduction is "consistent with applicable policy statements issues by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

1.  <u>Extraordinary and Compelling Reasons for Release</u>

Having considered the relevant factors set forth in 18 U.S.C. § 3553(a), the Court concludes that Defendant has established that extraordinary and compelling reasons warrant a reduction in her term of imprisonment. The spread of COVID-19 presents extraordinary and unprecedented challenges for the country and creates a serious issue for prisons. Due to the infectious nature of the virus, the Centers for Disease Control and Prevention (CDC) and state governments have advised individuals to practice good hygiene and social distancing and isolation. Socially distancing can be difficult for individuals living or working in a prison.

Defendant suffers from hypertension, diabetes, neuropathy, partial vision loss, and Charcot foot. Defendant takes insulin to manage her diabetes, but she is not allowed to use the type of insulin she was using before she began serving her sentence. These

factors increase the serious risk that COVID-19 poses for Defendant.  The CDC has identified hypertension and diabetes as comorbidities that increase the likelihood of serious risk from COVID-19.  See Interim Clinical Guidance for Management of Patients with Confirmed Coronavirus Disease, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last accessed April 24, 2020) ("Patients in China with no reported underlying medical conditions had an overall case fatality of 0.9%, but case fatality was higher for patients with comorbidities: 10.5% for those with cardiovascular disease, 7.3% for diabetes, and approximately 6% each for chronic respiratory disease, hypertension, and cancer.  Heart disease, hypertension, prior stroke, diabetes, chronic lung disease, and chronic kidney disease have all been associated with increased illness severity and adverse outcomes.").

In addition, Defendant has served over three years of her sentence with only one minor infraction, possessing pills that belonged to another inmate.  See Memorandum (d/e 232), at 2. Defendant serves as an orderly at FMC Carswell.  Id.  Defendant's

offense of conviction is a nonviolent drug crime, and Defendant has a supportive daughter who is willing to allow Defendant to live with her if Defendant is released. See id. at 1-2.

  2.  Sentencing Commission Policy Statements

A reduction of Defendant's term of imprisonment is consistent with the Sentencing Commission's policy statements. The relevant policy statement, § 1B1.13 of the Sentencing Guidelines, explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines, "after considering the factors set forth in 18 U.S.C. § 3553(a)," that "(1)(A) extraordinary and compelling reasons warrant the reduction; . . . (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The commentary to § 1B1.13 provides certain circumstances constituting "extraordinary and compelling reasons" that warrant a sentence reduction.[1] U.S.S.G. § 1B1.13 cmt. n.1. One of the

---

[1] Section 1B1.13 of the Sentencing Guidelines has not been amended to reflect the First Step Act's amendment to 18 U.S.C. § 3582(c)(1)(A). As it stands, § 1B1.13 refers to a reduction "upon the motion of the Director of the Bureau of Prisoners." No policy statement provides guidance for when a defendant files a motion. Nevertheless, the Court considers § 1B1.13.

circumstances is where a defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A). Another circumstance is where "an extraordinary and compelling reason other than, or in combination with," the listed circumstances is present. U.S.S.G. § 1B1.13 cmt. n.1(D). Defendant's health issues and the COVID-19 pandemic create an extraordinary and compelling reason that warrants a reduction of Defendant's term of imprisonment.

The Court also considers whether Defendant is a danger to the safety of any other person or to the community. See U.S.S.G. § 1B1.13. If Defendant quarantines herself at her daughter's home away from her daughter and son-in-law, it will diminish the risk of spreading the virus. Otherwise, the Court does not find that Defendant, who is serving a sentence for a nonviolent drug offense, poses a danger to the community.

Defendant has established that extraordinary and compelling reasons warrant a reduction in her term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A). Such a reduction is consistent with the

applicable policy statements issued by the Sentencing Commission. Accordingly, Defendant has satisfied the requirements to be eligible for compassionate release, and the Court finds that compassionate release is appropriate in this case.

### III. CONCLUSION

For the reasons set forth above, Defendant Terri Pinkerton's Motion for Compassionate Release (d/e 231) is GRANTED.  The Court hereby reduces Defendant's term of imprisonment from 84 months to time served.  The Court modifies Defendant's conditions of supervised release to require Defendant to spend 14 days on home confinement, with the home confinement starting as soon as possible after her term of supervised release begins.  Defendant shall be monitored by location monitoring, GPS monitoring, or telephonic monitoring, as approved by the United States Probation Office.  All other aspects of Defendant's sentence shall remain the same.

The Bureau of Prisons is ORDERED to release Defendant within 24 hours.  The Clerk is DIRECTED to send a copy of this Opinion to FMC Carswell.  Defendant must self-quarantine for a period of 14 days beginning at the time of her release, including

while she travels from FMC Carswell to her daughter's house.


ENTER:  April 30, 2020

> */s/ Sue E. Myerscough*
> SUE E. MYERSCOUGH
> UNITED STATES DISTRICT JUDGE